(Reap. Dec. 8268)

UNITED STATES v. THE DE HAAN CO.

Entry No. 6714.

(Decided December 18, 1953)

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector* and *Joseph E. Weil*, special attorneys), for the plaintiff.

*Philip Stein* (*Philip Stein* and *Marjorie M. Shostak* of counsel) for the defendant.

LAWRENCE, Judge:   This case is a collector's appeal for a reappraisement of certain cowhide leather slippers exported from Mexico. Although the entry covering the importation includes several items of merchandise, the only one involved herein is identified on the invoice as manufacturer's number 561. Said merchandise was entered and appraised at 9.75 Mexican pesos per pair, net, packed. The contention of plaintiff is that said merchandise should have been appraised at a value of 11.50 Mexican pesos per pair, packed, on the basis of export value, as that value is defined in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (d)). .

In support of the contention of plaintiff, the testimony of one witness and certain exhibits, which will be referred to *infra,* were introduced, and there was also received in evidence on behalf of the defendant the affidavit of Harry Mitchell, vice president of the defendant company.

Plaintiff's witness, C. M. McDaniel, identified himself as the appraiser of merchandise at the port of Laredo, a position which he has held for 3 years.   Prior thereto, for approximately 30 years, he had been an examiner of merchandise, during which time he had examined merchandise the same or similar to the merchandise involved herein. He stated that he is familiar with the articles in issue, having made the appraisal thereof.   He testified further that subsequent to appraisement of the merchandise in this case importations of identical merchandise came before him for examination and appraisement purposes. As illustrative, he identified entry 817, which was received in evidence as plaintiff's collective exhibit 1, entry 870, which was received in evidence as plaintiff's collective exhibit 2, and entry 1008, which was received in evidence as plaintiff's collective exhibit 3.   He stated that the date of purchase of the articles, covered by plaintiff's collective exhibits 1, 2, and 3, was the same as the date of purchase of the importation in issue herein, namely, February 15, 1946, and that although the shipment in controversy was invoiced, entered, and appraised at a unit value of 9.75 pesos Mexican currency per pair, exportation of which occurred May 11, 1946, the identical merchandise covered by collective exhibits 1, 2, and 3, exported on August 20, August 22, and August 29, 1946, respectively, was invoiced and entered at a unit value of 11.50 pesos Mexican currency per pair.

McDaniel testified further that since all purchases were made at the same time it was his opinion that the higher price for the item of merchandise in controversy should be used as the basis for determining its value, and his recommendation for an appeal was predicated upon that fact, inasmuch as purchase of the merchandise covered by collective exhibits 1, 2, and 3 indicated a price increase which occurred

prior to the date of exportation of the merchandise at bar. He added that he did not know whether or not the importer had an arrangement for future deliveries under a specific contract price and that he had no evidence of any price increase other than that disclosed by the three entries in evidence as plaintiff's exhibits.

The substance of the affidavit of Harry Mitchell, vice president of The De Haan Co., the importer herein, which was offered in evidence as defendant's exhibit A, is as follows: That he was familiar with the importation into the United States by the De Haan Co. during the years 1945 and 1946 of certain leather slippers, manufactured by Industrias Textiles, S. A., of Mexico, D. F., described as manufacturer's number 561, by reason of having personally made arrangements for the purchase thereof in Mexico; that arrangements were made for the purchase of the importation in issue and that the order was accepted and the price fixed at 9.75 pesos Mexican currency per pair by telephone on February 15, 1946. He had made three visits to Mexico during 1946 and had made numerous inquiries about market conditions in Mexico relating to the slippers in controversy not only from Industrias Textiles, S. A., but from other suppliers in Mexico as well. Most manufacturers in Mexico of this type of merchandise were located in Mexico City, a few being situated in Guadalajara, but the principal market in Mexico for the merchandise where it was freely offered for sale and sold was Mexico City. During the first 6 or 7 months of 1946, leather slippers, manufactured by Industrias Textiles, S. A., described as manufacturer's number 561, and the same type of slippers, manufactured by other suppliers in Mexico City, were freely offered for sale and sold to all who cared to buy, both for domestic consumption in Mexico, and also for export to the United States, in usual wholesale quantities of approximately 100 pairs, and the usual wholesale quantities were the same for domestic consumption and for export.

On or about May 11, 1946, he was in Mexico on business for his company and, after investigation and inquiry in Mexico City as to market conditions relating to the slippers in issue, he found that said slippers were being freely offered for sale and sold in Mexico City to all who cared to buy, both for domestic consumption in Mexico and for export to the United States, in the ordinary course of trade, and in the usual wholesale quantities of approximately 100 pairs at the price of 9.75 pesos Mexican currency per pair, and that the same slippers were also being freely offered for sale and sold on or about said date for future deliveries in the same quantities and in somewhat larger quantities at the same price.

Deponent also stated that during 1946 The De Haan Co., importer herein, purchased or sought to purchase 15,000 pairs of slippers per month which quantity was considerably in excess of the usual whole-

sale quantity and that such sales to his company were accordingly not in the ordinary course of trade nor in the usual wholesale quantities. While the importer paid a higher price for the same type of slippers imported into the United States from Mexico during the month of August 1946, said slippers were, nevertheless, being freely offered for sale to all purchasers in Mexico in the ordinary course of trade and in the usual wholesale quantities both for domestic consumption in, Mexico and for export to the United States on or about May 11, 1946, at the price of 9.75 pesos Mexican currency per pair.

Counsel for the parties have not indicated to the court whether appraisement was made on the basis of foreign or export value, as those values are defined in section 402 (c) and (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (c) and (d)), as amended by the Customs Administrative Act of 1938. The court must, therefore, rely on the presumption inherent in the appraiser's action that in appraising the controverted merchandise he found the foreign and export values to be the same, or that, in the event of a difference, he took the higher of said values.

The theory upon which plaintiff herein believes it should succeed in its claim that the articles in controversy should have been appraised at a value of 11.50 Mexican pesos per pair, packed, on the basis of export value, would appear to be contained in the following quotation from its brief:

> It has been well established by the Court of Customs and Patent Appeals that if a price rise occurs between the date of purchase and the date of exportation, such price rise must necessarily be reflected in the value, and the value of the merchandise at the date of exportation is the higher value. *White Lamb Finlay Inc.* v. *United States*, 29 C. C. P. A. (Customs) 199, C. A. D. 192.

There is no doubt that it is a basic rule that for a finding of foreign or export value the merchandise must be appraised at "the market value or the price at the time of exportation of such merchandise to the United States," and if the evidence is clear that there has been an advance in the market value or the price between the date of purchase and the date of exportation, and evidence of all the other factors set forth in section 402 (c) and (d), *supra*, is present, the higher value or price shall be the proper one.

However, in the case before the court, the only evidence of such higher value, namely, 11.50 Mexican pesos per pair, is represented by the entries in evidence as collective exhibits 1, 2, and 3. It is disclosed by the consular invoices attached thereto that said importations were "as per order accepted on February 15, 1946," and that exportation thereof from Mexico took place the latter part of August of that year, which was approximately 3 months subsequent to the exportation of the instant merchandise. Plaintiff's witness McDaniel admitted that he had not seen the purchase orders under which the subsequent ship-

ments had been procured, nor is there any indication that he had knowledge of the terms of the transactions, for example, whether or not the purchase price was left open for subsequent determination, or whether or not these transactions were other than "in the ordinary course of trade." There is no evidence whatsoever before the court to indicate that on the date of exportation of the instant merchandise the higher value contended for by the plaintiff herein was in effect. A showing of the existence of the higher price applicable to shipments exported 3 months thereafter is not proof that said price was the market value at which such or similar merchandise was sold or offered for sale on the date of exportation of the merchandise in issue.

Although there is an attempt by plaintiff herein to prove an export value for this merchandise different from the entered and appraised values, the record is devoid of any evidence of a foreign value and, as provided by section 402 (a) of the Tariff Act of 1930 (19 U. S. C. § 1402 (a)), the value of imported merchandise shall be "(1) The foreign value or the export value, whichever is higher." Therefore, it is incumbent upon a plaintiff seeking to establish export value as the proper basis of appraisement to submit satisfactory evidence that no higher foreign value existed.

The record before the court is wholly insufficient to support the value contended for by the plaintiff herein and fails to overcome the presumption of correctness attaching to the action of the appraiser. On this record, therefore, the court finds and holds that the value found by the appraiser is the proper value of the merchandise in issue.

Judgment will be entered accordingly.